## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 94-KA-01001-SCT

*LARRY MITCHELL*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/01/94 |
| TRIAL JUDGE: | HON. GRAY EVANS |
| COURT FROM WHICH APPEALED: | SUNFLOWER COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | CHARLES V. McTEER |
| | DONALD E. EICHER, III |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: CHARLES W. MARIS, JR. |
| DISTRICT ATTORNEY: | FRANK CARLTON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION. - 9/4/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 9/25/97 |

**EN BANC.**

**SMITH, JUSTICE, FOR THE COURT:**

¶1. Larry Mitchell prays for relief from conviction in Sunflower County Circuit Court. Mitchell was convicted of taking contraband onto penitentiary grounds and was sentenced to ten years with three years suspended provided that he participates in the Mississippi Department of Corrections Work Program. Mitchell charges that his conviction should be overturned because (1) he was denied a meaningful opportunity to present a defense of selective prosecution; (2) the trial judge erred in refusing to hear appellant's motions to dismiss based on selective prosecution; (3) the trial judge erred in refusing to rule on motions in limine seeking to bar the introduction of the fruits of a poisonous tree on grounds of untimeliness; (4) the State had no authority to search the person of the Appellant and find the alleged contraband; (5) Miss.Code Ann. § 47-5-193 is unconstitutionally void for its overbreadth and vagueness because persons of common intelligence may differ as to the meaning of its prohibitions and the means of its application. We reverse Mitchell's conviction, and remand to the

Sunflower County Circuit Court because of its failure to hear Mitchell's motions.

## FACTS

¶2. Larry Mitchell, defendant and appellant herein, first went to work as a correctional officer for the Mississippi Department of Corrections (MDOC) in 1984. On October 30, 1987, he signed a consent to search form as a condition of his employment. In 1990, for reasons not stated in the record, that employment was terminated. Mitchell appealed the termination through administrative channels, and in 1992, was reinstated and given back pay of $29,000. At the time of his reinstatement, Mitchell refused to sign another form consenting to random searches as a condition of his employment. Apparently, the department allowed him to return to work in spite of his refusal to sign the consent to search form.

¶3. On June 4, 1993, Mitchell was contacted by his brother for a loan of $900. Mitchell went to his bank and withdrew $1,000 in cash from his account in order to make the loan to his brother. However, that evening, Mitchell could not find his brother to deliver the money, so he carried it to work with him the next morning, June 5, 1993. His plan was to drop the money to his brother after work. Mitchell stopped on his way to work and bought something to eat, breaking a hundred dollar bill so that he would be able to take in lunch money without violating what he understood to be the rule of having no more than twenty dollars inside the inmate housing unit. Mitchell reached the gate and waited in line for fifteen minutes until reaching an area where cars were being searched. Mitchell informed Lee Shelborn, one of the highway patrol officers conducting the search, that he did not want his car searched. Shelborn then asked Mitchell to get out of his car and escorted him to Barry Parker, Chief of Security at Parchman. Mitchell then informed Parker that he did not want his car searched. Mitchell's reasoning was that he believed that the officers had to have reasonable suspicion or probable cause before conducting a search of his car. Parker and State Trooper Timothy Woods, a highway patrol investigator, informed Mitchell that he was subject to search at any time on the penitentiary grounds, that he would be searched and that his vehicle would be searched. When Mitchell refused requests by Woods to hand over his car keys, he was arrested for failure to comply with a lawful request of a police officer. However, he still refused to turn over his car keys, and they were taken from him by force. A search of Mitchell's person incident to arrest revealed that he was carrying $997 in his wallet. Mitchell was charged with four counts of simple assault on a police officer, two counts of resisting arrest; disorderly conduct; failure to comply with a request of a law enforcement officer, and bringing contraband on the grounds of the MDOC. All charges were subsequently dismissed, with the exception of the last, and the $997 was subsequently returned to Mitchell's possession. On May 26, 1994, Mitchell was reindicted on the sole charge of taking contraband onto the grounds of the MDOC.

¶4. On Monday, June 13, 1994, Shirley Byers, associate of Charles Victor McTeer, lead attorney in this case, received notice that the case was set for trial on June 24, 1994 . Due to a conflict in scheduling, the case was reset as a "back-up" case for trial on July 7, 1994 before Judge Howard Q. Davis. Between June 24, 1994 and the trial date, attorney Byers decided that she would seek election to the judicial post held by Judge Davis, to which she was subsequently elected. Mitchell's attorney was sure that Judge Davis would recuse himself prior to the trial because of the obvious conflict of interests which existed with Judge Davis hearing a case being handled by his opponent in the upcoming election. On July 6, 1994, attorney McTeer filed a Motion for Recusal requesting that

Judge Davis recuse himself from the case. Mitchell (or, rather, Mitchell's attorney) claims that a delay in filing the motions to be heard on the case ensued because defense counsel was unsure what judge would handle the case or whether the trial would be held on July 7, 1994. Counsel was informed that another circuit judge, the Honorable Grey Evans, would handle the matter on July 7, 1994, as planned.

¶5. On July 7, 1994, defense counsel filed a motion seeking to dismiss the indictment on constitutional grounds, asserting that Miss.Code Ann. § 47-5-193 denied Mitchell due process of law as applied, because the statute was void due to vagueness; and that Mitchell was subjected to an unlawful selective prosecution. The trial judge refused to hear either of these motions, ruling that they were untimely filed. Defense counsel also filed a motion in limine to bar the introduction of testimony or evidence of the search of Mitchell's person or of the fruits of that search. The trial Court also refused to hear this motion because he considered it to be untimely.

¶6. After the presentation of the evidence, the jury found Mitchell guilty of taking contraband onto property belonging to the MDOC. The trial judge sentenced Mitchell to ten years in the MDOC with three suspended as long as he participated in the MDOC work program. Aggrieved, Mitchell appeals.

<u>DISCUSSION OF LAW</u>

¶7. Mitchell's first allegation of error is dispositive, therefore, we decline to address the remainderof the issues raised. We reverse and remand on this basis so that the trial court may properly and carefully consider whether there is merit in Mitchell's motions.

**WHETHER THE TRIAL JUDGE ERRED IN REFUSING TO HEAR THE APPELLANT'S CONSTITUTIONAL CHALLENGE TO THE INDICTMENT AND DEFENDANT'S CLAIM THAT HE WAS THE SUBJECT OF A SELECTIVE PROSECUTION AS WELL AS THE MOTIONS IN LIMINE CLAIMING THAT THE CONTRABAND WAS THE FRUIT OF THE POISONOUS TREE.**

**¶8.** Mitchell claims that there is no rule of law or procedure in this State that affords a trial judge the opportunity to refuse to rule upon the legal merits of the proceeding upon the ground that the matter was untimely filed. To do so suggests that an otherwise improper proceeding resting upon an incorrect and/or errant theory of the law should be continued to closure despite its incorrectness. We agree with the principle behind that assertion: An otherwise improper proceeding should not continue to closure if the trial court can determine that it rests upon an errant theory, regardless of the timeliness (or lack thereof) in which the pre-trial motions were filed.

¶9. However, in agreeing in principle with Mitchell's assertion, we are not unmindful of Unif.Crim.R.Cir.Ct.Prac. 4.02, which reads in pertinent part:

> All pre-trial motions or other pleadings must be brought to the attention of the court at the time designated by the court, but in any event prior to the date set for trial, or will be considered withdrawn.

¶10. Under the rule , the judge was free to refuse to hear any motions introduced for the first time on the day of appeal. However, considering the odd nature in which the trial judge inherited this case,

and considering that he ostensibly knew nothing about this case prior to the day of trial, we can determine no reason why he might not have heard motions which may very well have allowed this case to have been disposed of in a very economical fashion.

¶11. Furthermore, decisions of this Court have amply demonstrated that the Rule is not a *per se* bar to the consideration of the motions where judicial economy might be better served to hear the motions and rule dispositively on them.

¶12. In *Fielder v. State*, 500 So. 2d 1002 (Miss. 1987), this Court reversed and remanded the trial judge who refused to hear motions to suppress based upon the fruit of the poisonous tree doctrine. In that case, motions had been filed four days prior to a first trial which ended in a mistrial, but no such motions were filed until the day during the second trial. This Court stated:

> . . .while we do not doubt that the trial judge intended to and did give the appellant as fair a trial as could possibly be given, we would urge upon him the necessity of having conducted a hearing on the motion to suppress filed prior to the first trial in which all the . . .evidence . . . might have been more easily dealt with and disposed of.
>
> As such we feel compelled to order reversal in the case *sub judice* in that a strict adherence to Rule 4.02 at this point would not serve any justifiable end.

*Id.* at 1004.

¶13. Here, this case was reset as a "back-up" case for trial on July 7, 1994, before Judge Howard Q. Davis. Lead attorney Shirley Byers decided she would seek election to the judicial post held by Judge Davis. This presented a compounded dilemma for trial counsel. On July 6, 1994, attorney McTeer filed a Motion for Recusal requesting that Judge Davis recuse himself from the case. A delay in filing the motions to be heard in the case ensued because the defense counsel was unsure which judge would handle the case or whether the trial would even be conducted on July 7, 1994. Counsel was not informed until a very late hour that Judge Evans, would in fact handle the matter on July 7,1994, as planned. Given this set of facts, the trial court should have considered Mitchell's motions.

¶14. Here, there was no cut-off date for motions set by either Judge Davis or Judge Evans. Further, because the trial judge handed out a rather severe ten year sentence, and because Mitchell has made various and sundry attacks on the indictment in his principal assignments of error, we find that in fairness, strict adherence to the Rule would serve no justifiable end, thus Rule 4.02 is waived, and this case is remanded so that these motions can be considered by the trial court on their merits.

## CONCLUSION

¶15. In light of the odd nature in which the lower court inherited the case from Judge Davis and in the interests of fairness, this Court finds that the trial judge should have heard the motions of the defendant. Therefore, we reverse Mitchell's conviction and remand for a hearing on the motions and proceedings consistent with this opinion.

**¶16. REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**PRATHER, P.J., PITTMAN, BANKS, ROBERTS AND MILLS, JJ., CONCUR. LEE, C.J., CONCURS IN RESULT ONLY. McRAE, J., DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J.**

**McRAE, JUSTICE, DISSENTING IN PART:**

¶17. I agree that this case should be reversed, but I cannot join the majority's decision to remand to the trial court for disposition of earlier motions made by Mitchell. This Court has an opportunity to decide the merits of Mitchell's appeal, including the constitutionality of the statute under which he was indicted. By remanding this matter to the trial court for consideration of issues which easily could be resolved by this Court, the majority compromises judicial economy, since the issues as presented will no doubt resurface in later stages of this case. Because the majority chooses to dismiss issues that are ripe for consideration, I dissent.

**SULLIVAN, P.J., JOINS THIS OPINION.**